1  CHAVEZ & GERTLER LLP
   Jonathan E. Gertler (Bar No. 111531)
2  Dan L. Gildor (Bar No. 223027)
   42 Miller Avenue
3  Mill Valley, California 94941
   Tel:   (415) 381-5599
4  Fax:   (415) 381-5572

5  ANDRUS ANDERSON LLP
   Lori E. Andrus (Bar No. 205816)
6  155 Montgomery Street
   San Francisco, CA 94104
7  Tel:   (415) 986-1400
   Fax:   (415) 986-1474

8
   Attorneys for Plaintiffs MARIE MINNS, KEMBERLY BRIGGS,
9  DOUGLAS CAMERON, the Proposed Class, and the Aggrieved Employees

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12               **SAN FRANCISCO DIVISION**

13  MARIE MINNS, KEMBERLY BRIGGS,          )  Case No:  3:13-03249 SI
    DOUGLAS CAMERON, individually and on   )
14  behalf of all others similarly situated and )  **CLASS ACTION**
    aggrieved,                             )
15                                          )  **FIFTH AMENDED COMPLAINT FOR**
                     Plaintiffs,           )  **VIOLATIONS OF THE CALIFORNIA**
16                                          )  **LABOR CODE AND BUSINESS AND**
          vs.                               )  **PROFESSIONS CODE § 17200,** *et seq.*
17                                          )
    ADVANCED CLINICAL EMPLOYMENT           )
18  STAFFING LLC, SUTTER EAST BAY          )  **E-FILED**
    HOSPITALS dba ALTA BATES SUMMIT        )
19  MEDICAL CENTER, and HRN SERVICES,      )
    INC.,                                   )
20                                          )
                     Defendants.           )
21  _____ )
                                            )
22  ADVANCED CLINICAL EMPLOYMENT           )
    STAFFING LLC,                           )
23                                          )
          Third Party Complainant,          )
24                                          )
          vs.                               )
25                                          )
    HRN SERVICES INC.,                      )
26                                          )
          Third Party Defendant.            )
27  _____ )

28

─────────────────────────────────────────────
                FIFTH AMENDED COMPLAINT

1          Plaintiffs MARIE MINNS, KEMBERLY BRIGGS, and DOUGLAS CAMERON

2    (collectively "Plaintiffs"), on behalf of themselves, other aggrieved employees, and all others

3    similarly situated, complains and alleges as follows:

4    **INTRODUCTION**

5          1.     This is a class action brought pursuant to Federal Rule of Civil Procedure 23

6    against Defendant ADVANCED CLINICAL EMPLOYMENT STAFFING, LLC ("ACES"), a

7    temporary services employer that contracts with health care facilities in California to supply

8    health care providers to perform services for the client health care facilities during labor disputes,

9    SUTTER EAST BAY HOSPITALS dba ALTA BATES SUMMIT MEDICAL CENTER

10   ("Sutter"), and HRN Services, Inc. ("HRN"), a temporary services employer that contracted with

11   ACES to supply health care providers to perform services for the client health care facilities

12   during labor disputes (collectively "Defendants").  Plaintiffs bring this class action on behalf of

13   themselves and all other nurses who were placed to work by ACES in California health care

14   facilities during labor disputes at any time during the four years preceding the filing of this action

15   through such time as this action is pending (the "Class").

16         2.     This is also a representative action brought pursuant to California Labor Code

17   section 2699 *et seq*. against Defendants by Plaintiffs on behalf all other nurses who that have been

18   placed to work by ACES in California hospitals during labor disputes who have experienced one

19   or more of the alleged violations herein (the "Aggrieved Employees").

20         3.     Plaintiffs bring this lawsuit on behalf of the Class and the Aggrieved Employees

21   (collectively, the "Replacement Nurses") to challenge the unfair and unlawful practices in which

22   Defendants have engaged with regard to paying the Replacement Nurses all the wages they have

23   earned and doing so in a timely manner.  Plaintiffs seek restitution and compensation on behalf of

24   themselves and the Replacement Nurses for unpaid wages, including overtime and other premium

25   wages, statutory and civil penalties, and interest.  Plaintiffs also seek declaratory and injunctive

26   relief.  Finally, Plaintiffs seek reasonable attorneys' fees and costs under the California Labor

27   Code and California Code of Civil Procedure section 1021.5.

28   //

**PARTIES**

4.      Plaintiff Marie Minns is an individual over the age of eighteen (18) and at all relevant times has been a resident of California.  Plaintiff Minns worked for ACES at a Sutter facility in Berkeley, California during a labor dispute in May 2012.

5.      Plaintiff Kemberly Briggs is an individual over the age of eighteen (18) and at all relevant times has been a resident of Illinois.  Plaintiff Briggs worked for ACES at various Sutter facilities in the San Francisco Bay area in California during labor disputes in 2011, 2012, and 2013, including during a strike that started on or about May 15, 2013.

6.      Plaintiff Douglas Cameron is an individual over the age of eighteen (18) and at all relevant times has been a resident of California.  Plaintiff Cameron worked for HRN and ACES at a Sutter facility in the San Francisco Bay Area during a labor dispute in May 2013.

7.      Defendant ACES is an Alabama corporation headquartered in Oneonta, Alabama. ACES is authorized to do business in, and does business in, California.

8.      Defendant Sutter is a California corporation headquartered in Sacramento, California.

9.      Defendant HRN is a California corporation headquartered in Glendale, California.

10.      Plaintiffs are informed and believe and on that basis allege that each of the Defendants acted in concert with each and every other Defendant, intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and proximately caused damage and injury thereby to Plaintiffs and the Replacement Nurses as alleged herein.

11.      At all times herein mentioned, each Defendant was the agent or employee of each of the other Defendants and was acting within the course and scope of such agency or employment.

**JURISDICTION AND VENUE**

12.      This Court has jurisdiction over Plaintiffs' and the Replacement Nurses' claims for unpaid wages because Defendants ACES, Sutter and HRN are qualified to do business, and regularly conducts business, in California, and because the violations of law alleged herein

1    occurred in California.  On July 12, 2013, ACES removed the case from the Alameda County

2    Superior Court.

3        13.    Venue is proper in this Court because it was removed from the Alameda County

4    Superior Court and because the acts and omissions alleged herein took place in this district and

5    Plaintiffs were employed by Defendants in this district.

6                    **FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

7        14.    ACES is a temporary services employer that provides Replacement Nurses to its

8    health care provider clients during labor disputes, including strikes.  ACES is contracted by health

9    care providers to recruit and employ staff for assignments that range from one day to several

10   weeks.  Though Replacement Nurses are supposed to be paid daily for this work, the Replacement

11   Nurses have generally not received their wages on a daily basis.

12       15.    HRN is a temporary services employer that provides Replacement Nurses to health

13   care provider clients during labor disputes, including strikes.  By contract, HRN agreed to provide

14   nurses to ACES to assist ACES in meeting Sutter's personnel needs during the labor disputes at

15   issue in this litigation.  The HRN nurses were paid by HRN.

16       16.    Sutter is a health care provider operating in California.  In 2011 Sutter and ACES

17   executed a Job Action Staffing Agreement ("Staffing Agreement") under which ACES agreed to

18   provide, and Sutter agreed to engage, temporary employees when Sutter became involved in labor

19   disputes, including strikes, with its permanent employees.

20       17.    Pursuant to the terms of the Staffing Agreement both Sutter and ACES agreed to

21   comply, and cause their employees and subcontractors to comply, with all provisions of federal

22   and California law.  Under the Staffing Agreement, ACES directly employed the replacement

23   Nurses, while Sutter was responsible for direct supervision and daily management of the

24   Replacement Nurses as well as review and verification of the Replacement Nurses' time records.

25       18.    Under the agreement between ACES and HRN, HRN agreed that the nurses it

26   provided to ACES would remain HRN employees and would remain liable for wages payable to

27   those nurses, while Sutter retained the right to exercise discretion and control over the nurses in

28   the performance of their services during the labor disputes.

19.    Pursuant to the terms of the Staffing Agreement, Sutter arranged for and provided all transportation between the Nurses' hotels and the facilities.  Sutter and ACES further agreed that Sutter would "retain ultimate responsibility for approving policies and procedures relating to the [Nurses'] Services and shall be responsible for managing daily operations, including daily supervision of the [Nurses]."  ACES agreed to instruct the Nurses that they "must abide with the policies, and procedures of [the] Facility."  Sutter "retain[ed] the ultimate decision making authority in determining candidate suitability" and "the right to interview each [Nurse] and make the final decision regarding the assignment."

20.    On information and belief, Sutter exercised control over the hours and working conditions of the Nurses, directly and indirectly.  Sutter established and maintained job requirements for the Nurses, including, for example, that they hold valid applicable licenses and be vaccinated, and that they undergo drug screening and background checks prior to coming to work for Sutter.  Sutter dictated the Nurses' schedules, and assigned the Nurses to particular units within the hospital facilities.  Sutter provided detailed parameters, requirements and instructions regarding how the Nurses' jobs were to be performed and provided the Nurses materials regarding facility rules and protocols that they were required to follow.  Sutter maintained control over the Nurses' daily work assignments, directed, monitored and supervised their work, and supplied the equipment necessary to perform their work.  Although Sutter may not have had the ability to terminate a Nurse's employment with ACES or HRN, Sutter had exclusive authority to remove any Nurse from the job site.  Sutter received, kept, maintained and/or had access to the Nurses' employment records and/or information.  Sutter exercised direct and indirect control over the Nurses' wages, including by reviewing, approving (or disapproving), and providing the Nurses' daily sign-in sheets to ACES.  Nurses were required to seek approval from Sutter managers for any overtime.

21.    Replacement Nurses are recruited from across the country.  When assigned to work at health care facilities in California during a labor dispute, Replacement Nurses such as Plaintiffs are put up at a hotel near the facility at which they will be working.

//

22.    Prior to obtaining their room key, Replacement Nurses first go through a check-in process during which ACES and Sutter verify that each of the Replacement Nurses' paperwork, certifications, and immunizations are in order.  Despite the fact that the check-in process is required in order for the Replacement Nurses to get a room key and subsequently be authorized to work, Defendants have not compensated Replacement Nurses for this time.

23.    Defendants have also not compensated Replacement Nurses for the time each has spent travelling by bus to and from the hospital to which they are assigned to work.  At the start of each day, Defendants require Replacement Nurses to assemble in the lobby of the hotel at which they are staying in order to be collectively transported by bus to the hospitals at which they are assigned to work.  Defendants prohibit Replacement Nurses from arranging their own transportation.  The buses are scheduled such that Replacement Nurses get to the hospitals early. They thereafter must wait at the hospital, unable to leave the hospital, before starting their shifts. At the conclusion of the shifts, the Replacement Nurses are required to reassemble at a meeting point in the hospitals and wait for the bus to fill before the bus departs to collectively transport them back to their hotel.  Defendants have not paid the Replacement Nurses for any of this time.

24.    Replacement Nurses are scheduled to work 12 hour shifts.  Accordingly, they are entitled to three 10-minute rest periods throughout their shift and two meal periods.  At no time, however, have Defendants informed Replacement Nurses that they are entitled to three 10-minute rest periods during a shift or two meal periods.  Given this lack of information, Replacement Nurses routinely do not take all of the rest and meal periods to which they are entitled.  Moreover, Defendants' policy and practice has been to not pay Replacement Nurses for any missed meal and rest periods regardless of whether patient needs or safety concerns prevented a Replacement Nurse from being relieved of duty during either meal or rest periods.

## CLASS ACTION ALLEGATIONS

25.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23 for violations of California's Labor Code and Business & Professions Code section 17200, *et seq.*  Plaintiffs seek to represent the following class of employees:

<u>Class definition:</u> All present and former nurses who were placed to work by Advanced Clinical Employment Staffing LLC ("ACES") in California health care facilities on a temporary basis during labor disputes at any time during the four years preceding the filing of this action through such time as this action is pending.

<u>Subclass definition:</u> All present and former nurses who were hired by HRN Services, Inc. to be placed to work by ACES in California health care facilities on a temporary basis during labor disputes at any time during the four year preceding the filing of this action through such time as this action is pending.

26.     On information and belief, ACES has placed members of the Class in several health care facilities during the relevant time period, accounting for more than 100 individuals. Accordingly, the members of the Class are so numerous that joinder of all members would be impracticable.  The disposition of their claims through this class action will benefit both the parties and the Court.  The exact number and identity of the proposed Class members are readily ascertainable through inspection of ACES's records.

27.     Common questions of law and fact exist as to members of the Class that include, but are not limited to, the following:

(a)     Whether Defendants compensated Plaintiffs and members of the Class for all hours worked;

(b)     Whether Defendants authorized and permitted Plaintiffs and members of the Class to take the requisite number of rest periods each shift as required by Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(12)(A);

(c)     Whether Defendants provided Plaintiffs and members of the Class the requisite number of meal periods each shift as required by Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(11)(A);

(d)     Whether Defendants relieved Plaintiffs and members of the Class during rest and meal periods or otherwise paid Plaintiffs and members of the Class premium wages;

(e)     Whether Defendants provided Plaintiffs and members of the Class accurate wage statements showing all hours worked;

FIFTH AMENDED COMPLAINT

(f)    Whether Defendants engaged in unfair competition proscribed by the California Business and Professions Code by engaging in the conduct described hereinabove as to members of the Class;

(g)    The scope and type of injunctive relief necessary to prevent the wage and hour violations described herein; and

(h)    The measure of restitution and damages to compensate Plaintiffs and members of the Class for the violations alleged herein.

28.    Plaintiffs' claims are typical of the claims of the Class that Plaintiffs seek to represent.  Plaintiffs and members of the Class were not properly paid for all hours worked as required by California law, were not timely paid their wages, and were not authorized and permitted to take rest periods.  Defendants' common course of conduct with respect to Plaintiffs and members of the Class has caused Plaintiffs and members of the Class to sustain the same or similar injuries and damages.

29.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs are members of the Class and do not have any conflict of interest with other Class members.  Plaintiffs have retained and are represented by competent counsel who are experienced in complex class action litigation, including wage and hour class actions such as the present action.

30.    The nature of this action and California law make a class action the superior and appropriate procedure to afford relief for the wrongs alleged herein.

## REPRESENTATIVE ACTION ALLEGATIONS

31.    Plaintiffs are aggrieved employees.  Plaintiffs were co-employed by Defendants ACES, Sutter and HRN during which time Defendants committed against them one or more of the violations alleged below.

32.    Notice of the alleged violations by ACES was provided by Plaintiff Minns to the Labor Workforce and Development Agency ("LWDA") on May 1, 2013.  The LWDA responded on June 18, 2013 that it did not intend to investigate.

//

33.     Notice of the alleged violations by ACES and Sutter was provided by Plaintiff Briggs to the Labor Workforce and Development Agency ("LWDA") on March 24, 2014.  The LWDA responded on April 22, 2014 that it did not intend to investigate.

34.     Notice of the alleged violations by ACES, Sutter and HRN was provided by Plaintiff Cameron to the Labor Workforce and Development Agency ("LWDA") on August 19, 2014.

**FIRST CAUSE OF ACTION**
**Failure to Pay All Wages Due: Transit Time**
**(On behalf of the Class and the Aggrieved Employees against All Defendants)**

35.     Plaintiffs re-allege and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

36.     Under California law, employers must compensate employees for all "hours worked."  (*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324 ["California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked."]; *e.g.*, Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050 (4)(B) ["Every employer shall pay to each employee . . . not less than the applicable minimum wage for all hours worked"].)

37.     For employees in the health care industry such as the Replacement Nurses, "hours worked" means "the time during which an employee is suffered or permitted to work for the employer, whether or not required to do so, as interpreted in accordance with the provisions of the Fair Labor Standards Act."  (Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050 (2)(K).)  Under the Fair Labor Standards Act, time spent traveling to and from the actual place of performance of the principal activity or activities for which the employee is employed to perform, which is preliminary or postliminary to such principal activities, is not compensable.  (29 U.S.C. § 254(a).) However, activities that are integral and indispensable to principal activities are themselves principal activities.  (*IBP, Inc. v. Alvarez* (2005) 546 U.S. 21, 37.)

38.     At all relevant times, Defendants have required and mandated that the Replacement Nurses take a bus to and from the hotel at which Defendants housed the Replacement Nurses and the health care facilities to which they were assigned to work.  On information and belief, Defendants require staff to report for collective transportation because

1    Defendants' business is enhanced by controlling or diminishing any adverse reactions to the

2    presence of the Replacement Nurses, which it does by controlling the entrance and exit of the

3    Replacement Nurses from the health care facilities at which they are placed.  Furthermore,

4    Defendants' requirement that the Replacement Nurses use company-provided transportation

5    ensures that the Replacement Nurses are not waylaid by picket lines or other means intended to

6    block access by the Replacement Nurses to the health care facilities.  Plaintiffs and the

7    Replacement Nurses rode the buses at Defendants' behest for Defendants' benefit; otherwise the

8    Replacement Nurses would not be able to reliably get to the health care facilities through the

9    picket lines.  As such, riding the bus is integral and indispensable to the job of a Replacement

10   Nurses and is itself a principal activity that is compensable under the Fair Labor Standards Act.

11          39.    At all relevant times, Defendants have not compensated the Replacement Nurses

12   for the time spent being driven to and from the health care facilities.  Defendants have deprived

13   the Replacement Nurses of their rightfully earned wages as a direct and proximate result of

14   Defendants' policies and failure and refusal to pay for all hours worked.  The Replacement

15   Nurses otherwise work at least 8 hours a day or 40 hours in a work week.  The Replacement

16   Nurses are therefore entitled to recover their rightfully earned wages, plus interest, attorneys' fees

17   and costs, as well as civil penalties, pursuant to California Labor Code sections 1194, 558, and

18   2699(f).

19                            **SECOND CAUSE OF ACTION**
                  **Failure to Pay All Wages Due: Time Spent Waiting**
20        **(On behalf of the Class and the Aggrieved Employees against All Defendants)**

21          40.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

22   preceding paragraphs as though fully set forth herein.

23          41.    Under California law, employers must compensate employees for all "hours

24   worked."  (*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324 ["California's labor statutes

25   reflect a strong public policy in favor of full payment of wages for all hours worked."]; *e.g.*, Wage

26   Order 5-2001, Cal. Code Regs., tit. 8, § 11050(4)(B) ["Every employer shall pay to each

27   employee . . . not less than the applicable minimum wage for all hours worked"].)

28   //

42.     For employees in the health care industry such as the Replacement Nurses, "hours worked" means "the time during which an employee is suffered or permitted to work for the employer, whether or not required to do so, as interpreted in accordance with the provisions of the Fair Labor Standards Act."  (Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050 (2)(K).)  Under the Fair Labor Standards Act, time spent waiting at the place of performance subsequent to an integral and indispensable activity as a result of an employer's practices is integral and indispensable to principal activities and is itself a principal activity that must be compensated.  (*IBP, Inc. v. Alvarez* (2005) 546 U.S. 21, 37.)  This is particularly true if the time spent waiting is primarily for the benefit of the employer and the employee is not free to engage in other personal activities while he or she waits.  (29 C.F.R. § 785.15 [when "employee is unable to use the time effectively for his own purposes . . . . [and the time] belongs to and is controlled by the employer[,] . . . waiting is an integral part of the job"].)

43.     At all relevant times, Defendants have required and mandated that the Replacement Nurses take a bus to and from the hotel at which Defendants housed the Replacement Nurses and the health care facilities to which they were assigned to work.  Defendants, however, scheduled the buses in such a way that Replacement Nurses would arrive at the facility to which they were assigned prior to the start of their shift.  The Replacement Nurses would thereafter have to wait at the facility until the start of their shift.  During this time, the Replacement Nurses are not free to engage in personal pursuits or leave the facility.  Rather, they must wait at the facility.  On information and belief, Defendants require staff to report early for their shifts because Defendants' business is enhanced by controlling or diminishing any adverse reactions to the presence of the Replacement Nurses, which it does by controlling the Replacement Nurses while they are on site at the health care facilities at which they are placed.  By doing so, Defendants ensure that the Replacement Nurses are not waylaid by picketers or otherwise prevented from reliably performing their job duties.  As such, waiting for the shifts to start after being required to arrive at the facilities early is an integral and indispensable part of the job of Replacement Nurses and is itself a principal activity that is compensable under the Fair Labor Standards Act.

44.     At all relevant times, Defendants have not compensated the Replacement Nurses for the time spent waiting before the start of the shift after being driven to and from the health care facilities.  Defendants have deprived the Replacement Nurses of their rightfully earned wages as a direct and proximate result of Defendants' policies and failure and refusal to pay for all hours worked.  The Replacement Nurses otherwise work at least 8 hours a day or 40 hours in a work week.  The Replacement Nurses are therefore entitled to recover their rightfully earned wages, plus interest, attorneys' fees and costs, as well as civil penalties, pursuant to California Labor Code sections 1194, 558, and 2699(f).

### THIRD CAUSE OF ACTION
**Failure to Pay All Wages Due: Check-In Process**
**(On behalf of the Class and the Aggrieved Employees against All Defendants)**

45.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

46.     Under California law, employers must compensate employees for all "hours worked."  (*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324 ["California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked."]; *e.g.*, Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(4)(B) ["Every employer shall pay to each employee . . . not less than the applicable minimum wage for all hours worked"].)

47.     For employees in the health care industry such as the Replacement Nurses, "hours worked" means "the time during which an employee is suffered or permitted to work for the employer, whether or not required to do so, as interpreted in accordance with the provisions of the Fair Labor Standards Act."  (Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050 (2)(K).)  Under the Fair Labor Standards Act, activities other than principal activities are compensable if those activities are integral and indispensable to principal activities.  (*IBP, Inc. v. Alvarez* (2005) 546 U.S. 21, 37.)  This is particularly true if the activity at issue is engaged in primarily for the benefit of the employer and the employee is not free to engage in other personal activities while he or she is otherwise engaged in the activity.  (29 C.F.R. § 785.15 [when "employee is unable to use the time effectively for his own purposes . . . . [and the time] belongs to and is controlled by the employer[,] . . . waiting is an integral part of the job"].)

48.     At all relevant times, Defendants have required and mandated that the Replacement Nurses engage in a check-in process before they start work at the hospital and even before the Replacement Nurses are allowed to check into their hotel room.  During the check-in process, Replacement Nurses queue up for various stations at which ACES and Sutter verify the Replacement Nurses certifications and other paperwork, performs drug and health screenings, and otherwise ensures that the Replacement Nurses can begin orientation.  Though Defendants compensate Replacement Nurses for the time spent during orientation, Defendants do not compensate the Replacement Nurses for the time spent during the check-in process.

49.     On information and belief, Defendants require Replacement Staff to engage in the check-in process because Defendants' business is enhanced by managing the paperwork and other information required by the health care facilities in a centralized and step-by-step procedure. Absent the check-in process, ACES would not be able to ensure that the Replacement Nurses are fully qualified to start work at Sutter's facilities, as Sutter requires.  On information and belief, Replacement Nurses who do not go through the check-in process are unable to check into their hotel room, go to orientation, or otherwise work at the client health care facilities.  As such, the check-in process is an integral and indispensable part of the job of Replacement Nurses and is itself a principal activity that is compensable under the Fair Labor Standards Act.

50.     At all relevant times, Defendants have not compensated the Replacement Nurses for the time spent engaging in the check-in process.  Defendants have deprived the Replacement Nurses of their rightfully earned wages as a direct and proximate result of Defendants' policies and failure and refusal to pay for all hours worked.  The Replacement Nurses are therefore entitled to recover their rightfully earned wages, plus interest, attorneys' fees and costs, as well as civil penalties, pursuant to California Labor Code sections 1194, 558 and 2699(f).

**FOURTH CAUSE OF ACTION**
**Failure to Pay Premium Wages for Missed Meal Periods**
**(On behalf of the Class and the Aggrieved Employees against All Defendants)**

51.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein, and further alleges as follows:

//

52.     In California, an employer satisfies the obligation to provide meal periods to its employees if it relieves employees of all duty, relinquishes control over their activities, permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so.  (*Brinker Restaurant Corp. v. Super. Ct.* (2012) 53 Cal.4th 1004 [139 Cal.Rptr.3d 315, 343, 273 P.3d 513, 536-37].)  If an employee is not relieved of all duty during a meal period, the employer must pay the employee for the meal period as time worked as well as an additional hour premium wage.  (Cal. Lab. Code § 226.7 and Cal. Code Regs., tit. 8, § 11050(11)(B).)

53.     From time to time, patient care needs and safety concerns have forced Replacement Nurses to work through their meal periods.  Pursuant to Defendants' policy, however, Defendants do not pay for any missed meal periods.

54.     Plaintiffs and the Replacement Nurses work shifts up to 12 hours.  As such, any additional time worked would be overtime.

55.     By virtue of Defendants' failure to pay for any missed meal periods, Defendants have deprived the Replacement Nurses their rightfully earned wages, including overtime and premium wages.  The Replacement Nurses are entitled to recover such unpaid wages, plus interest, and attorneys' fees and costs, as well as civil penalties, pursuant to California Labor Code sections 226.7, 558, and 2699(f).

**FIFTH CAUSE OF ACTION**
**Failure to Pay Premium Wages for Missed Rest Periods**
**(On behalf of the Class and the Aggrieved Employees against All Defendants)**

56.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein, and further alleges as follows:

57.     In California, rest periods must be duty-free.  If an employee is not relieved of all duty during a rest period, the employer must pay the employee an additional hour premium wage.  (Cal. Lab. Code § 226.7 and Cal. Code Regs., tit. 8, § 11050(12)(B).)

58.     From time to time, patient care needs and safety concerns have forced the Replacement Nurses to work through their rest periods.  Pursuant to Defendants' policy, however, Defendants do not pay for any missed rest periods.

59.     By virtue of Defendants' failure to pay for any missed rest periods, Defendants have deprived the Replacement Nurses their rightfully earned wages.  The Replacement Nurses are entitled to recover such unpaid wages, plus interest, and attorneys' fees and costs, as well as civil penalties pursuant to California Labor Code sections 226.7, 558, and 2699(f).

**SIXTH CAUSE OF ACTION**
**Failure to Timely Pay Wages**
**(On behalf of the Aggrieved Employees against Defendants ACES and HRN)**

60.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein, and further alleges as follows:

61.     California Labor Code section 201.3(b)(3), states that "[i]f an employee of a temporary services employer is assigned to work for a client engaged in a trade dispute, that employee's wages are due and payable at the end of each day, regardless of when the assignment ends."

62.     During all relevant times, ACES has been a temporary services employer as that term is defined in California Labor Code section 201.3 (a)(1), that has employed Aggrieved Employees and assigned them to work for clients engaged in trade disputes.

63.     During all relevant times, HRN has been a temporary services employer as that term is defined in California Labor Code section 201.3 (a)(1), that has employed Aggrieved Employees and assigned them to work for clients engaged in trade disputes.

64.     During all relevant times, ACES and HRN did not pay the Aggrieved Employees at the end of each day worked.

65.     By willfully failing to pay members of the Class their wages on a daily basis, Defendants ACES and HRN have violated California Labor Code section 201.3 (b)(3), entitling Plaintiffs and members of the Class to the statutory penalties set out in California Labor Code section 203.

66.     By failing to pay the Aggrieved Employees their wages on a daily basis, Defendants ACES and HRN have violated California Labor Code section 201.3(b)(3), entitling Plaintiffs and the Aggrieved Employees to the civil penalties set out in California Labor Code section 210.

### SEVENTH CAUSE OF ACTION
**Failure to Provide Rest Periods**
**(On behalf of the Class and the Aggrieved Employees against All Defendants)**

67.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein, and further alleges as follows:

68.    Section 12(A) of Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(12)(A), provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period." The authorized rest period time "shall be based on the total hours worked daily at the rate of ten (1) minutes net rest time per four (4) hours or major fraction thereof." During such a rest period, the employee is to be relieved of all duty.

69.    During the four years preceding the filing of this complaint and continuing to the present, Plaintiffs and the Replacement Nurses worked shifts of up to 12 hours. Defendants, however, never informed Plaintiffs and the Replacement Nurses that they were entitled to three rest periods. Defendants maintained no written policy regarding rest periods and engaged in no written communication with the Replacement Nurses regarding rest periods. In doing so, Defendants have failed to authorize and permit Replacement Nurses to take all of the rest periods to which they have been entitled.

70.    Section 12(B) of Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11070(12)(B), provides that "[i]f an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period was not provided." This parallels the requirement in California Labor Code section 226.7(b), that an employee be paid one additional hour of pay at the employee's regular rate of compensation for each work day that a legal rest period is not provided.

71.    By failing to authorize and permit the requisite number of rest periods, Defendants have failed to provide the Replacement Nurses proper rest periods such that Plaintiffs and members of the Class are entitled to one hour of pay at their regular rate for each shift during which they were not provided the requisite number of rest periods. Defendants have not as a

FIFTH AMENDED COMPLAINT

1   matter of policy paid Replacement Nurses any wages in connection with its failure to provide

2   proper rest periods.  Plaintiffs and members of the Class have been deprived of their rightfully

3   earned compensation as a direct and proximate result of Defendants' policies.  Plaintiffs and

4   members of the Class are therefore entitled to recover such amounts that have been withheld,

5   including interest, and attorneys' fees and costs, as well as civil penalties, pursuant to California

6   Labor Code sections 226.7, 558, and 2699(f).

### EIGHTH CAUSE OF ACTION
**Failure to Provide Meal Periods**
**(On behalf of the Class and the Aggrieved Employees against All Defendants)**

9        72.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

10  preceding paragraphs as though fully set forth herein, and further alleges as follows:

11        73.    In California, an employer is required to provide employees with a 30-minute meal

12  period for any shift less than eight hours and two meal periods for any shift between 8 and 12

13  hours.  (Cal. Lab. Code § 512; Cal. Code Regs., tit. 8, § 11050(11)(A).)  Plaintiffs and the

14  Replacement Nurses work 12-hour shifts.  Accordingly, Defendants should have provided

15  Plaintiffs and the Replacement Nurses two meal periods.

16        74.    Defendants' stated policies provide Replacement Nurses one meal period each 12

17  hour shift.  Though an employee in the health care industry can waive his or her right to one of

18  the two meal periods to which they would otherwise be entitled during a 12-hour shift,[1]

19  Defendants have not obtained any meal period waivers from Replacement Nurses.

20        75.    By failing to provide the Replacement Nurses a second meal period, Defendants

21  have failed to provide the Replacement Nurses proper meal periods such that Plaintiffs and the

22  Replacement Nurses are entitled to one hour of pay at their regular rate for each shift during

23  which they were not provided the requisite number of meal periods.  Defendants have not paid

24  Replacement Nurses any wages in connection with its failure to provide proper meal periods as a

25  matter of policy.  Plaintiffs and the Replacement Nurses have been deprived of their rightfully

26  earned compensation as a direct and proximate result of Defendants' policies.  Plaintiffs and the

---

28  [1] Cal. Code Regs., tit. 8, § 11050(11)(D).

Replacement Nurses are therefore entitled to recover such amounts that have been withheld, including interest, and attorneys' fees and costs, as well as civil penalties, pursuant to California Labor Code sections 226.7, 558, and 2699(f).

**NINTH CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements**
**(On behalf of the Class and the Aggrieved Employees against All Defendants)**

76.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein, and further alleges as follows:

77.    California Labor Code section 226 requires that Defendants provide the Replacement Nurses timely and accurate statements showing, *inter alia*, gross wages earned and total hours worked, all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

78.    The Division of Labor Standards and Enforcement ("DLSE") has stated that "[t]he purpose of the wage statement requirement is to provide transparency as to the calculation of wages."  (DLSE, Opinion Letter (July 6, 2006), p. 2.)  Accordingly, "a complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law and that deductions from wages are proper."

79.    At all relevant times, the wage statements for the Replacement Nurses have not included all the time they spent working, including the time that they were being transported by bus as well as any time they spent waiting for their shift to start.

80.    At all relevant times, however, Defendants knew or should have known that the Replacement Nurses were entitled to accurate and complete wage statements and that the Replacement Nurses were working more hours than reflected on their wage statements.  Despite this, Defendants did not supply the Replacement Nurses with complete and accurate wage statements showing all hours worked, the corresponding hourly rate, and all wages earned.

81.    Members of the Class have been injured by Defendants' failure to include all wages earned on each wage statement because members of the Class were not able to verify that they were paid the proper amount, and because in order to determine whether they were paid

1    correctly, members of the Class had to conduct mathematical calculations.  The need to conduct

2    such calculations is contrary to the requirements of California Labor Code section 226(e).

3        82.    As a consequence of Defendants' actions, members of the Class have been injured

4    and are entitled to all available statutory penalties, costs and reasonable attorneys' fees, including

5    those provided in California Labor Code section 226(e).  Plaintiffs also seeks an injunction

6    pursuant to California Labor Code section 226(g), to ensure compliance with the requirements of

7    section 226 and to enjoin Defendants' unlawful conduct.

8        83.    As a consequence of Defendants' actions, and the provision of inaccurate wage

9    statements, the Aggrieved Employees are entitled to civil penalties pursuant to California Labor

10   Code section 2699(f).

11                    **TENTH CAUSE OF ACTION**
                     **Failure to Keep Accurate Records**
12            **(On behalf of the Aggrieved Employees against All Defendants)**

13       84.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

14   preceding paragraphs as though fully set forth herein, and further alleges as follows:

15       85.    California Labor Code section 1174 imposes a requirement on all employers to

16   "[k]eep payroll records showing the hours worked daily."

17       86.    Wage Order 5-2001 further imposes a requirement on all employers to "keep

18   accurate information with respect to each employee," including "[t]ime records showing when the

19   employee begins and ends each work period" as well as "[m]eal periods . . . and total daily hours

20   worked."  (Cal. Code Regs., tit. 8, § 11050(7)(A)(3).)

21       87.    At all relevant times, Defendants never recorded any of the time that the

22   Replacement Nurses spent on the bus being transported to and from their hotel and the hospital at

23   which they worked, or the time spent during the check-in process.  By failing to record such time,

24   Defendants have failed to maintain accurate records of the total daily hours worked.

25       88.    The aggrieved employees, therefore, are entitled to the civil penalties set out in

26   California Labor Code section 1174.5.

27   //

28   //

# ELEVENTH CAUSE OF ACTION
## Unfair Competition
### (On behalf of the Class against All Defendants)

89.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein, and further alleges as follows:

90.    The Unfair Competition Law ("UCL"), California Business & Professions Code section 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair or fraudulent business acts or practices.  The UCL provides that a Court may enjoin acts of unfair competition, and order restitution to affected members of the public.

91.    Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing of this suit, Defendants have committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to:

    (a)    Failing to maintain accurate records showing daily hours worked and wages paid, in violation of California Labor Code section 1174(d) and Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(7), which imposes a requirement on all employers to "keep accurate information with respect to each employee," including "[t]ime records showing when the employee begins and ends each work period" as well as "total daily hours worked."

    (b)    Failing to pay all wages, including overtime premiums, to Plaintiffs and members of the Class who were duly owed them for all time worked, in violation of California Labor Code section 1194 and Wage Order 5-2001;

    (c)    Failing to authorize and permit Plaintiffs and members of the Class to take the requisite number of rest periods each shift as required by Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(12)(A);

    (d)    Failing to provide Plaintiffs and members of the Class the requisite number of meal periods each shift as required by Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(12)(A);

//

    (e)  Failing to relieve Plaintiffs and members of the Class of all duty during some rest and some meal periods and not otherwise pay Plaintiffs and members of the Class any premium wages;

    (f)  Failing to timely pay members of the Class in accordance with California Labor Code section 201.3(b)(3); and

    (g)  Failing to provide Plaintiffs and members of the Class with accurate wage statements showing all hours worked, the corresponding hourly rate, and wages earned, in violation of California Labor Code section 226.

92.  The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages and discouraging overtime labor underlying them, serve as unlawful predicate acts and practices for purposes of California Business and Professions Code section 17200, *et seq*.

93.  The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of California Business and Professions Code section 17200 *et seq*. Among other things, the acts and practices have taken from Plaintiffs and the Class wages rightfully earned by them, while enabling Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

94.  California Business and Professions Code section 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendants from repeating their unlawful, unfair and fraudulent business acts and business practices alleged above. If Defendants are not enjoined from this conduct, they will continue to engage in these unlawful practices. Monetary compensation alone will not afford adequate and complete relief to Plaintiffs and members of the Class because it is impossible to determine the amount of damages that will compensate for Defendants' actions in the future if such actions are not enjoined now. Thus, without injunctive relief, a multiplicity of actions will result from Defendants' continuing conduct.

//

FIFTH AMENDED COMPLAINT

95. As a direct and proximate result of the aforementioned acts and practices, Plaintiffs and members of the Class have suffered a loss of money and property, in the form of unpaid wages that are due and payable to them.

96. California Business and Professions Code section 17203 provides that the Court may restore to any person in interest any money or property that may have been acquired by means of such unfair competition. Plaintiffs and members of the Class are entitled to restitution pursuant to California Business and Professions Code section 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this complaint.

97. California Business and Professions Code section 17202 provides: "Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." Plaintiffs and members of the Class are entitled to enforce all applicable penalty provisions of the California Labor Code pursuant to California Business and Professions Code section 17202.

98. Plaintiffs request that the Court issue a preliminary and permanent injunction requiring Defendants to advise all class members of their rights pursuant to the California Labor Code and Wage Order 5-2001, and to provide Plaintiffs and members of the Class all applicable benefits afforded by California's Labor Code and Wage Order 5-2001, including but not limited to (a) payment of all wages earned for all hours worked; (b) provision of accurate wage statements; and (c) timely paying wages.

99. Plaintiffs' success in this action will enforce important rights affecting the public interest and in that regard Plaintiffs sues on behalf of herself as well as others similarly situated. Plaintiffs and members of the Class seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

100. Plaintiffs herein take upon themselves enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiffs by

1    forcing her to pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate

2    pursuant to California Code of Civil Procedure section 1021.5 and otherwise.

3    **TWELFTH CAUSE OF ACTION**
**Declaratory Relief**

4    **(On behalf of the Class against All Defendants)**

5         101.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

6    preceding paragraphs as though fully set forth herein, and further alleges as follows:

7         102.    An actual controversy has arisen between Plaintiffs and members of the Class, on

8    the one hand, and Defendants, on the other hand, as to their respective rights, remedies and

9    obligations.  Specifically, Plaintiffs contend and Defendants deny, that:

10        (a)    Defendants have failed and continue to fail to pay wages, including

11   overtime wages, to Plaintiffs and members of the Class that were duly

12   owed them for all time worked;

13        (b)    Defendants have failed and continue to fail to authorize and permit

14   Plaintiffs and members of the Class to take the requisite number of rest

15   periods each shift as required by Wage Order 5-2001, Cal. Code Regs., tit.

16   8, § 11050(12)(A);

17        (c)    Defendants have failed and continue to fail to provide Plaintiffs and

18   members of the Class the requisite number of meal periods each shift as

19   required by Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(11)(A);

20        (d)    Defendants have failed and continue to fail to relieve Plaintiffs and

21   members of the Class of all duty during some rest and some meal periods

22   and have not otherwise paid Plaintiffs and members of the Class any

23   premium wages;

24        (e)    Defendants have failed and continue to fail to timely pay members of the

25   Class in accordance with California Labor Code section 201.3(b)(3).

26        (f)    Defendants have failed and continue to fail to provide Plaintiffs and

27   members of the Class accurate wage and hour statements showing all hours

28   worked, the corresponding hourly rate, and wages earned; and

103.    Plaintiffs further allege that members of the Class are entitled to recover earned wages, liquidated damages, and penalties as alleged herein.

104.    Accordingly, Plaintiffs seek a declaration as to the respective rights, remedies, and obligations of the parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

1.    For declaratory relief as pled or as the Court may deem proper;

2.    For preliminary, permanent and mandatory injunctive relief prohibiting Defendants, their officers, agents and all those acting in concert with them, from committing in the future those violations of law herein alleged;

3.    For an equitable accounting to identify, locate and restore to all current and former employees the wages they are due, with interest thereon;

4.    For an order awarding Plaintiffs and the Class compensatory damages, including lost wages, earnings and other employee benefits and all other sums of money owed to Plaintiffs and Class, together with interest on these amounts, according to proof;

5.    For all statutory penalties to which Plaintiffs and the Class are entitled;

6.    For an assessment of civil penalties as appropriate;

7.    For an award of reasonable attorneys' fees as provided by applicable law;

8.    For all costs of suit; and

9.    For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: August _____25_____, 2014        CHAVEZ & GERTLER LLP

ANDRUS ANDERSON LLP

By: _____
        Lori E. Andrus

Attorneys for Plaintiff Marie Minns, Plaintiff Kemberly Briggs, Plaintiff Douglas Cameron, the Proposed Class, and the Aggrieved Employees