UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE MINNS, *et al*.,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED CLINICAL EMPLOYMENT STAFFING LLC, *et al*.,<br><br>Defendants. | Case No. 13-cv-03249-SI<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 111 |

On May 29, 2015, the Court held a hearing on plaintiffs' motion for class certification. After consideration of the parties' papers and the evidence before the Court, the Court hereby GRANTS plaintiffs' motion, with the following modification: the meal and rest period claims alleged in the fourth, fifth seventh and eighth causes of action are certified on behalf of the requested class through April 30, 2015.[1]

**BACKGROUND**

Named plaintiffs Marie Minns, Kemberly Briggs, and Douglas Cameron are health care providers who worked for defendant Advanced Clinical Employment Staffing, LLC ("ACES"), a temporary services provider that provides "strike replacement nurses" to its health care provider clients during labor disputes. The Fifth Amended Complaint ("FAC") alleges that ACES contracted with defendant Sutter East Bay Hospitals ("Sutter") to provide temporary employees to

---

[1] As set forth in this order, the Court grants plaintiffs leave to add an additional subclass representative who alleges meal and rest break claims for the pre-May 2013 time period.

the facility during labor disputes between Sutter and its permanent employees. FAC ¶ 16.[2] The FAC also alleges that defendant HRN Services Inc. ("HRN") contracted with ACES to provide nurses to ACES to assist ACES in meeting Sutter's personnel needs. *Id*. ¶ 15.

Plaintiffs have moved to certify the first, second, third, fourth, fifth, seventh, eighth, ninth, eleventh and twelfth causes of action on behalf of a class defined as:

> All present and former nurses who were placed to work by Advanced Clinical Employment Staffing LLC ("ACES") in California health care facilities on a temporary basis during labor disputes at any time during the four years preceding the filing of this action through such time as this action is pending[3];

and a subclass defined as:

> All present and former nurses who were hired by HRN Services, Inc. to be placed to work by ACES in California health care facilities on a temporary basis during labor disputes at any time during the four years preceding the filing of this action through such time as this action is pending.

The first through third causes of action allege that defendants have failed to pay strike replacement nurses for all hours worked; the fourth and fifth causes of action allege that defendants have failed to pay class members a premium wage for missed meal and rest periods; the seventh and eighth causes of action allege that defendants have failed to provide class members the requisite number of meal and rest periods; and the ninth, eleventh, and twelfth causes of action allege that defendants failed to provide accurate wage statements, engage in unfair competition, and seek declaratory relief based on the underlying wage and hour violations.

In support of the motion for class certification, plaintiffs have submitted copies of the contracts between defendants as well as "strike scripts" and contracts between ACES and strike replacement nurses, declarations from the named plaintiffs, deposition testimony from various defense witnesses, defendants' discovery responses, and other documents produced by the parties in discovery. Plaintiffs have also submitted declarations from the proposed class counsel attesting

---

[2] Plaintiffs state that defendant Sutter East Bay Hospitals, dba Alta Bates/Summit Medical Center ("Sutter"), has entered into a memorandum of understanding with plaintiffs to settle the class-wide claims against Sutter and, on that basis, Sutter does not oppose the motion for class certification.

[3] This case was originally filed in state court on May 1, 2013 by plaintiff Marie Minns, and thus the class period begins May 1, 2009.

to their experience.

Defendant HRN has filed an opposition to plaintiffs' motion, to which ACES has filed a single paragraph joinder (ACES has not filed a separate opposition).[4] HRN opposes certification on numerous grounds, and HRN challenges the adequacy and typicality of named plaintiff Cameron, the only named plaintiff who worked for both HRN and ACES. HRN has submitted the declaration of Arthur Flaster, the president and CEO of HRN. Copies of Mr. Cameron's employment records are attached as an exhibit to the Flaster declaration. The Flaster declaration and exhibit is the only evidence submitted by either defendant in opposition to class certification.[5]

## I.     Contractual relationships between defendants

Plaintiffs assert, and HRN agrees, that ACES controlled the working conditions for all of the putative class members, including those who were hired by HRN. Plaintiffs have submitted copies of the contract between ACES and HRN. Gildor Decl. Ex. 1. That contract states that

> ACES has entered into an exclusive agreement (the "Master Agreement") with Sutter Health System, East Bay Region, dba Alta Bates Summit Medical Center (the "Client") to act as its Master Vendor and to act as the single point of contract for the provision of temporary healthcare and administrative staffing services at the Client's facility . . .

*Id*. at 1.

The contract specifies, *inter alia*, that HRN "shall, and shall require its . . . personnel to comply with Client and ACES policies and procedures," § 5.3; states that Sutter "shall have the sole discretion to determine the duties, shifts, units and assignments of agency [HRN] personnel

---

[4] ACES joins in the opposition filed by HRN except as to certain portions of HRN's opposition in which HRN (1) quotes provisions of the HRN/ACES contract; (2) asserts that HRN did not have control over the activities of the replacement workers once they reported for work; and (3) asserts that Sutter and ACES are co-employers with HRN of the HRN replacement employees. *See* Dkt. 116 at 2:1 (listing portions of HRN's opposition in which ACES does not join). ACES did not appear at the hearing on plaintiffs' motion for class certification.

[5] HRN's opposition brief contains numerous factual assertions for which there is no evidentiary support. For example, HRN repeatedly asserts that it co-employed less than 5% of the putative class, yet HRN does not cite any evidence in support of the assertion. *See* Dkt. 115 at 1:3. Similarly, HRN has not provided any evidence support of its assertion that it "is not an operating entity, having sold its business and assets to a competitor, Accountable Healthcare Staffing in December 2013," and thus that the declaratory relief requested against HRN is inappropriate. *Id*. at 1:23-2:1.

3

during hours worked for [Sutter], § 4.4;" sets forth the ACES' requirements that HRN personnel must meet, §§ 4.1-4.18; and states that the HRN employees will be "assigned" to ACES. *Id*. §§ 4.2, 4.4, 6.2. The contract also states that ACES reserved the right to remove any HRN employee. *Id*. § 5.15.

Plaintiffs have also submitted a copy of the contract between ACES and Sutter. *Id*. Ex. 18.[6] That contract provides, *inter alia*, that "[Sutter] has final approval and direction of duties of all staffing assigned," § 1.1; "[Sutter] in consultation with [ACES] shall arrange for and provide all transportation between Replacement Workers' hotels and facility," § 1.5, and that [ACES shall inform each of its Employees of the requirement to take all appropriate meal and rest period breaks as assigned by [Sutter] and further that [Sutter] is not financially responsible for missed breaks." *Id*. § 3.c.

Although ACES appears to dispute that it controlled the working conditions for the putative class and subclass members, ACES has not submitted any evidence showing otherwise.

## II. Claims regarding "work time"

Plaintiffs' first through third causes of action allege that defendants have failed to pay strike replacement nurses for all hours worked.

### A. "Checking in" time

Plaintiffs contend that "work time" includes time spent by class members "checking in" at the beginning of each assignment. Plaintiffs have submitted evidence showing that before any strike replacement nurses could start working (or get a key to their hotel room)[7] they would have to go through a check-in process that would begin once the nurse arrived at the command center

---

[6] It does not appear that there was a contract directly between HRN and Sutter.

[7] Plaintiff Minns lives in Long Beach, California, plaintiff Briggs lives in Chicago, Illinois, and plaintiff Cameron lives in San Jose, California. *Id*. Ex. 4 (Minns Decl. ¶ 3); Ex. 5 (Briggs Decl. ¶ 4); Ex. 6 (Cameron Decl. ¶ 4). Plaintiffs state that when they worked as strike replacement nurses they were required to stay in hotels assigned by ACES. For example, plaintiff Cameron states that he had to stay at a hotel in Walnut Creek while he was working a May 2013 strike at Alta Bates Summit Medical Center's Herrick Campus in Berkeley, California. *Id*. Ex. 6 (Cameron Decl. ¶ 4).

for the particular strike. Gildor Decl. Ex. 3 (Allcorn Dep. at 190:9-193:2). Nurses who flew in were transported by bus to the command center. *Id*. Ex. 3 (Allcorn Dep.at 197:17-198:15). During the check-in process, the strike replacement nurses would take a drug test and visit a number of stations where they would, *inter alia*, have their credentials checked, fill out forms, pick up timesheets, get security badges, apply for reimbursement for travel expenses, and get housing and work assignments. *Id*. Ex. 3 (Allcorn Dep. at 190:25-193:2, 195:5-196:2; Ex. 4 (Minns Decl. ¶¶ 4-5); Ex. 5 (Briggs Decl. ¶ 4); Ex. 6 (Cameron Decl. ¶ 5.). Named plaintiff Briggs describes the process as follows:

> Before I got to my assigned hotel—in fact, before I could even find out where I would be staying—I had to go through a check in process at one of ACES' command centers. When I got there, there was normally a very long line, where I would have to wait to get my name checked in. Once checked in, I would then have to wait while ACES personnel reviewed all of my documentation and immunization records to make sure everything was on file and proper. I then would go to another room where I would wait again to give a urine test. I would have to fill out some paperwork after that too, swearing that the sample I'd just given was mine. Then I would go into another room and get processed as far as what hospital I would be working at, the department, and the shift. Finally, I would find out where I would be staying and what time I would have to leave the hotel each morning. I would also submit a W-4 form and review and sign a form from the hotel at which I would be staying at, get my timesheet and orientation packet. Sometimes this process took as long as six hours because a lot of the nurses arrived at the same time. Generally, it could take as long as three to four hours, with an average of about two hours once the ACES staff got more up to speed on what they were doing.

*Id*. at Ex. 6 (Briggs Decl. ¶ 5). Class members were not paid for this time. *Id*. Ex. 3 (Allcorn Dep. at 199:2-5); Ex. 7 (Response to Special Interrogatory 9); Ex. 8 (Response to Request for Admission 6).

Plaintiffs contend that the time spent during the check in process is compensable because under California law, an employer must pay its employees for all hours worked. *Armenta v. Osmose Inc.*, 37 Cal. Rptr. 3d 460, 468 (2005) ("California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked."). In the healthcare industry, "hours worked" is to be interpreted in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as amended by the Portal-to-Portal Act of 1947, § 251 *et seq. See* Cal. Wage Order 5-2001 § 2(K), Cal. Code Regs., tit. 8, § 11050(2)(K). Plaintiffs contend that whether the

check-in activities constitute work is a common question because either these activities are compensable for all strike nurses or these activities are not compensable for all putative class members.

### B. Transportation time

Plaintiffs also contend that "work time" includes the time the strike replacement nurses spend being transported to and from the hotels at which they are staying and the assigned hospitals, as well as the time they must wait at the hospital upon arriving before their shift starts and the time they at the end of the shift wait prior to departure. Plaintiffs have submitted evidence showing that to get to and from the hospitals to which they were assigned, strike replacement nurses took vans and shuttle buses that were arranged for them. *Id*. Ex. 9 (Navellier Dep. at 187:9-189:4); Ex. 10 (Response to Request for Admission 5 ("SEBH admits that when it negotiated the staffing agreement with ACES, it expected that ACES would transport most of the strike replacement nurses to and from the workplace by bus or other collective means."); Ex. 14 (ACES "strike scripts" and contracts with nurses stating that "[t]ransportation will be provided to and from facility each day crisis staffing is in progress for each shift."). The evidence submitted by plaintiffs shows that depending on where class members were housed and their particular assignment, the time it would take for the strike replacement nurses to get from hotel to hospital and vice versa could vary between 5 minutes to more than 30 minutes one way. *Id*. Ex. 2 (Kriegler Decl. ¶ 12, Ex. C).

Plaintiffs contend that the busing time is compensable because busing the strike replacement nurses is a "principal activity" associated with the work a strike replacement nurse is hired to perform. Under the FLSA and the Portal-to-Portal Act, employers are not required to pay employees for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," or for "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). However, employers must pay compensation for "principal activities," or for those activities that are integral and indispensable to the principal activities. 29 C.F.R. § 790.8(a).

Plaintiffs contend that whether traveling by bus to cross picket lines is one of a strike replacement nurse's principal activities (or integral and indispensable to one of a strike replacement nurse's principal activities) is a common question that predominates over individualized inquiries.

### C. Time spent waiting before shift begins and after shift ends

Plaintiffs also contend that they should be compensated for the time spent after nurses arrive at the facility before their shifts begin, and the time spent waiting at the facility to be transported back to their hotels after their shifts ended. The buses transporting the nurses were scheduled to arrive at the facilities by 6:30 a.m. on a typical strike day with the strike replacement nurses' shift starting at 7:00 a.m. *Id*. Ex. 12 (Lawson Dep. at 103:4-7). The buses were also only supposed to leave the facilities to return back to the hotels once everyone scheduled to be on the bus was on the bus. *Id*. Ex. 12 (Lawson Dep. at 107:18-23).

Plaintiffs contend that because the waiting occurs after the first principal activity of the day (being bused to the facility) and before the last principal activity in the day (being bused back to the hotel), such time should be compensable. *See* 29 C.F.R. § 790.6(a) ("Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted."). Plaintiffs contend that whether the waiting time is a compensable is a common question that predominates any individualized inquiry.

## III. Claims regarding meal and rest periods
### A. Premiums for missed breaks

Plaintiffs' fourth and fifth causes of action allege that defendants have failed to pay class and subclass members a premium wage for missed meal and rest periods. Strike replacement nurses who missed meal or rest periods are entitled to a premium wage. Wage Order 5-2001, Cal. Code Regs., tit. 8, § 11050(11)(B), (12)(B).

Plaintiffs contend that it was ACES' policy to not pay any premium for missed meal and

rest periods prior to May 2013. Plaintiffs have submitted contracts for strikes in 2011 and 2012 which state that employees will work 12 hour shifts unless otherwise directed by the facility, and provide the following with regard to breaks:

> **MEAL/BREAKS:** by California wage and hour laws professionals are required to take a 30 minute lunch. You MUST take your meal breaks. THERE WILL BE NO PAY FOR MISSED MEALS & BREAKS. It is imperative that you must take your breaks and meals by CA State Law. [some contracts also state that employees should bring their meals]

*Id*. Ex. 14 at ACES/Minns 000083, ACES/Minns 000088, ACES/Minns 000094, ACES/Minns 000099, ACES/Minns 000110, ACES/Minns 000112, ACES/Minns 000117. The policy was repeated in the written instructions that ACES provided replacement nurses informing them of how to fill out the timesheets. *Id*. Ex. 15 (Payroll and Timesheets Instructions stating "MISSED MEALS OR BREAKS WILL NOT BE PAID PER CONTRACT!").[8]

Plaintiffs argue that although Regina Allcorn, the Executive Director of Clinical Operations for ACES, testified that ACES would pay for missed meal periods, this testimony is belied by the fact that there is no record in the payroll data that ACES has produced showing any such payments. According to plaintiffs, ACES payroll records account only for payments in the following categories: Strike Reg Hrs, Strike OT Hrs, Strike DT Hours, Strike GT Hours, Guaranteed Hrs., Charge Pay, On Call Pay, Strike-GT Hours, Call Back OT, Overtime Pay, Double Overtime, Personal Leave, Call Back Pay. *Id*. Ex. 2 (Kriegler Decl. ¶ 9a).

### B. Failure to provide requisite number of meal and rest periods

Plaintiffs' seventh and eighth causes of action allege that defendants have failed to provide the class and subclass members the requisite number of meal and rest periods. Putative class members are assigned to work 12 hour shifts, and as such they would be entitled to two 30-minute

---

[8] The parties' papers state that ACES changed its meal and rest break policy in May 2013 in response to this lawsuit. HRN has submitted the employment records from named plaintiff Cameron, who worked the May 2013 strike. Cameron's contract differs from the earlier contracts in that it contains a section whereby employees who can waive their right to take a second meal break. Flaster Decl. Ex. A. Cameron's daily time record sheets, on ACES letterhead, inform employees that they are entitled to rest periods of 10 minutes for each four hours worked or major fraction thereof, and also contain a "waiver of second meal period." *Id*.

United States District Court
Northern District of California

1   meal periods and three 10-minute rest periods. Cal. Wage Order 5-2001, Cal. Code Regs., tit. 8, §
2   11050(11)(A), (12)(B).
3         Plaintiffs contend that prior to the filing of the complaint in this action, ACES never
4   informed the strike replacement nurses about their entitlement to any rest periods in the course of
5   their shift, and only informed strike replacement nurses that they were entitled to one meal period
6   unless they were working a 16-hour shift. For instance, the strike contracts that ACES had with
7   each class and subclass member prior to May 2013 only informed the strike replacement nurses
8   that they are "required to take a 30 minute lunch" and said nothing about rest periods. Gildor
9   Decl. Ex. 14. Plaintiffs note that the timesheets that ACES gave the strike replacement nurses
10  provided space for recording only one meal period and no rest periods. Plaintiffs also cite the
11  deposition testimony of Ms. Allcorn, ACES' designated witness on the subject of ACES' meal
12  and rest period policies, in which she could not recall any instance of anyone informing a strike
13  replacement nurse prior to May 2013 that they were entitled to a second meal period in a 12-hour
14  shift. Id. Ex. 3 (Allcorn Dep. at 177:5-13, 178:1-5). According to plaintiffs, starting in May 2013,
15  ACES began to collect written waivers regarding a second meal period from strike replacement
16  nurses. *d*. Ex. 9 (Navellier Dep. at 91:14-92:2, 148:2-6); *see also* Flaster Decl. Ex. 1 (Cameron's
17  contract and time sheets).

**LEGAL STANDARD**

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014), *citing Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The Court's "class certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1194 (2013), *quoting Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks omitted). These analytical principles govern both Rule 23(a) and 23(b). *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). However, "Rule 23 grants courts

9

no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S.Ct. at 1194-95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id*.

Under Rule 23(a), the class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

**DISCUSSION**

**I. Rule 23(a) Requirements**

HRN contends that the subclass of HRN employees is not sufficiently numerous and that its employees are not geographically dispersed. As an initial matter, the Court notes that there is no requirement that class members be geographically dispersed in order to maintain a class action. In any event, plaintiffs have submitted evidence showing that there are over 1,400 class members, 149 of whom were employed by HRN during the class period, and that these individuals travelled to California from 32 different states. Gildor Decl. Ex. 3 (Kriegler Decl. ¶ 10); Gildor Reply Decl. Ex. 2 (Kriegler Supp. Decl. ¶ 4). Defendants have not submitted any evidence to the contrary, and the Court concludes that the proposed class and subclass are sufficiently numerous such that joinder of each class member would be impracticable. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed where plaintiff class consists of forty or more members); Newberg on Class Actions § 3:12 (5th ed.) (more than 40 class members "raises a presumption of impracticability of joinder based on numbers alone").

HRN also contends that the class "is defined too broadly" and thus that it is unmanageable.

Defendant also argues that the proposed class includes a "great number" of individuals who could not have been harmed by HRN's allegedly unlawful conduct, and that the class and subclass are improperly based on "subjective criteria." Dkt. 115 at 6:23-25.

Defendant does not explain what it means by these arguments. Contrary to defendant's assertions, the class and subclass are defined in objective terms based on employment with HRN and/or ACES and placement in California during a labor dispute, and class members can be identified from defendants' employment records. Plaintiffs' class and subclass definitions do not rely on any subjective criteria. *See Lyon v. United States Immigration & Customs Enforcement*, 300 F.R.D. 628, 635 (N.D. Cal. 2014) (rejecting contention that class definition was improper where it did not "use subjective standards or terms that depend on the resolution of the merits"). The Court also finds that the class and subclass definitions are not overbroad because the challenged practices apply to the entire class and subclass. *In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 533 (N.D. Cal. 2012) (rejecting contention that class challenging rest break policy was overbroad where policy applied to entire class).

HRN contends that plaintiff Cameron is not typical because his "claim is against a different defendant than the defendants against whom other class members' claims lie." Dkt. 115 at 11:18-19. HRN also contends that Plaintiff Cameron is not typical because he only worked the May 2013 strike, and he signed waivers of his second meal break and signed an acknowledgment of the need to take meal and rest breaks. Neither defendant challenges the adequacy or typicality of plaintiffs Minns and Briggs.

The Court finds that defendant's challenges to plaintiff Cameron's typicality are not persuasive. The fact that the class does not allege claims against HRN does not undermine the propriety of certifying a subclass of employees who, like plaintiff Cameron, allege claims against HRN, ACES and Sutter on the ground that those defendants were his joint employers during the course of strike assignments. As discussed *infra*, the Court finds that plaintiffs have not met their burden to show that the meal and rest break claims should be certified for the time period beginning May 2013 when defendants changed their meal and rest break policies. Accordingly, the fact that plaintiff Cameron worked the May 2013 strike and signed a waiver of his second meal

break does not render him atypical because Cameron is not representing the subclass on the meal and rest break claims, and he shares the same "hours worked" claims as the rest of the subclass.

Defendants do not challenge adequacy of plaintiffs' counsel to represent the class. *See* Rule 23(a)(4). The Court has reviewed the declarations submitted by plaintiffs' counsel and finds that counsel has demonstrated adequacy sufficient for Rule 23(a)(4).[9]

## II.     Rule 23(b) Requirements

Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires that common questions of law or fact predominate and that a class action is superior to other available methods of adjudication.

Plaintiffs contend that common issues predominate and that plaintiffs can prove their claims through common proof. Plaintiffs contend that there are questions of law or fact that are common to the class and subclass, including but not limited to (1) whether ACES and HRN Services are joint employers of the class and subclass, and as such liable for the violations of the others; (2) whether traveling by bus to cross picket lines is a principal activity and therefore compensable; (3) whether waiting at the hospital upon arrival and prior to departure is compensable; (4) whether time spent during the check-in process is compensable; (5) whether ACES has failed to compensate members of the class and subclass for missed meal and rest periods; and (6) whether ACES has failed to provide members of the class and subclass the requisite number of meal and rest periods.

The Court finds that these issues can be established through common proof. For example, whether defendants were joint employers can be determined based upon the contracts between defendants and with class members. Defendants' liability for transit time and the waiting time depends on whether traveling by bus to cross a picket line is a principal activity of a strike replacement nurse. That question will be determined based on an evaluation of the nature of the work that the class members perform. The same is true for whether the time spent in the check-in

---

[9] The Court combines the Rule 23(a)(2) commonality and the Rule 23(b)(3) predominance analyses into a single discussion.

12

process is compensable. *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 572 (C.D. Cal. 2008) (holding that question of whether time is compensable under the California Labor Code is a common question); *see also Rai v. Santa Clara Valley Transp. Auth.*, No. 5:12-CV-004344-PSG, 2015 WL 860761, at *8 (N.D. Cal. Feb. 24, 2015); *Schulz v. QualxServ, LLC*, No. 09-CV-17-AJB MDD, 2012 WL 1439066, at *3-4 (S.D. Cal. Apr. 26, 2012) (holding commonality satisfied where plaintiffs "challenge uniform policies and systemic practices that apply to this class of employees" and where "[e]ach claim is based on a specific statutory requirement"); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010).

With regard to the meal and rest break claims, the Court finds that plaintiffs have submitted evidence that prior to May 2013, defendants had a policy not to pay for missed meal and rest breaks prior, defendants did not inform class members of their entitlement to take a second meal break, and defendants did not inform class members of their entitlement to take rest breaks. Although plaintiffs' papers state that defendants' policy with regard to meal and rest breaks changed in May 2013, plaintiffs have not detailed precisely how that policy changed nor have plaintiffs explained how they would prove their meal and rest break claims on a class basis for the period beginning May 2013. The primary evidence that the Court has regarding the revised meal and rest break policy consists of plaintiff Cameron's contract and time records for the May 2013 strike. *See* Flaster Decl. Ex. 1. Based upon the record before the Court, the Court concludes that the meal and rest break claims can be litigated on a class basis from the beginning of the class period through April 30, 2013. *See Bradley v. Networkers International, LLC*, 211 Cal.App.4th 1129, 1150 (2012) (holding meal and rest break claims should have been certified where, *inter alia*, "plaintiffs presented evidence that under Networkers' uniform practice, none of the workers was provided, or given authorization to take, the required meal or rest breaks" and defendant "acknowledged it did not have a policy and did not know if the employees took meal or rest breaks").[10]

HRN asserts that individual issues predominate. HRN contends that individualized proof

---

[10] The Court grants plaintiffs leave to add an additional subclass representative who alleges meal and rest break claims for the pre-May 2013 time period.

13

will have to be obtained from each class member to determine questions such as "[w]hich defendant(s) did they work for (Sutter, ACES, HRN, or someone else)?" and "[w]hich strikes did they work, as each strike had different circumstances and paperwork? How many strikes did they work?" Dkt. 115 at 8:13-16. However, the necessity of making individualized factual determinations does not defeat class certification if those determinations are susceptible to generalized proof like employment and payroll records. *See* Newberg on Class Actions § 4:50 (5th ed.) (common issues predominate when "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim"); *see also Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). In addition, even though HRN asserts that each strike had different circumstances and different paperwork, HRN has not specified what these differences are or how they are relevant to the class certification analysis. Further, a number of the questions that HRN identifies are irrelevant because they relate to claims that have been dismissed (such as whether class members were provided adequate break facilities), or they relate to the sixth cause of action alleging failure to pay daily pay for which plaintiffs do not seek certification. Similarly, the individual issues that HRN identifies with regard to determining whether class members waived meal and rest breaks for strikes beginning in May 2013 are irrelevant because the Court is not certifying the class or subclass for that time period.

The Court also finds that although the calculation of damages may require some individualized inquiry, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Numerous courts have certified class actions where the damages were to be calculated on an individual basis where the damages were calculated based on the wages each employee lost due to the defendant's unlawful practices.. *See, e.g.*, *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI–JLT, 2014 WL 321159, at *6 (E.D. Cal. Jan. 29, 2014) report and recommendation adopted, 2014 WL 631586 (E.D. Cal. Feb. 18, 2014) (listing and discussing cases); *Quezada v. Con-Way Freight, Inc.*, No. C 09-03670 JSW, 2014 WL 186224, at *2 (N.D. Cal. Jan. 16, 2014).

Here, plaintiffs have shown that damages can be calculated through payroll, time, and

14

employment records, which track the class members' hourly rates paid, hours that each class member worked, the meal periods that each class member took, the hotels at which each stayed, and the locations at which they worked. Gildor Decl. Ex. 2 (Kriegler Decl. ¶ 9). For the one claim where the amount of unpaid wages is not susceptible to common proof (the claim for time spent during the check-in process), plaintiffs have set forth a plausible method through random sampling and representative testimony to measure the impact of defendants' failure to compensate class members for this time on a class-wide basis. *See id*. (Kriegler Decl. ¶¶ 13-15). Defendants have not challenged the adequacy of plaintiffs' proposed methodology.

HRN also contends that a class action would be unmanageable because "[h]ow will all of these different class members be notified? Will they have to 'opt in' or 'opt out?' And, quite frankly, what is the benefit of certifying the classes here?" Dkt. 115 at 16:13-14. However, as plaintiffs note, the questions that HRN raises are routine in the context of any class action. Class members will be notified using the best practicable means of providing notice once the Court approves the notice to be provided. Fed. R. Civ. P. 23(c)(2)(B). Because the class and subclass are being certified pursuant to Rule 23(b)(3), class members will have to opt out. *See* Fed. R. Civ. Proc. 23(c)(2)(B).

Finally, HRN contends that class treatment is inappropriate in the present case because "there are alternative venues by which Plaintiffs can seek relief that are available such as the Labor Board and the hearings therein which are more economically feasible for a small claim." Dkt. 115 at 16:4-7. However, the availability of administrative proceedings before the Labor Commissioner does not defeat class certification of wage and hour claims such as those alleged in this case. *See Otsuka v. Polo Ralph Lauren Corp*., 251 F.R.D. 439, 448-49 (N.D. Cal. 2008)

## CONCLUSION

In light of the foregoing, the Court hereby ORDERS that the first, second, third, ninth, eleventh and twelfth causes of action in the fifth amended complaint filed August 25, 2014, be certified for class treatment on behalf of a class defined as:

> All present and former nurses who were placed to work by Advanced Clinical Employment Staffing LLC ("ACES") in

> California health care facilities on a temporary basis during labor disputes at any time during the four years preceding the filing of this action through such time as this action is pending;

and a subclass defined as:

> All present and former nurses who were hired by HRN Services, Inc. to be placed to work by ACES in California health care facilities on a temporary basis during labor disputes at any time during the four years preceding the filing of this action through such time as this action is pending.

The Court hereby ORDERS that the fourth, fifth, seventh, and eighth causes of action in the fifth amended complaint filed August 25, 2014, be certified for class treatment on behalf of a class defined as:

> All present and former nurses who were placed to work by Advanced Clinical Employment Staffing LLC ("ACES") in California health care facilities on a temporary basis during labor disputes at any time during the four years preceding the filing of this action through April 30, 2013;

Marie Minns and Kemberly Briggs are hereby appointed representatives of the class as defined above. Douglas Cameron is hereby appointed representative of the subclass defined above. The Court grants plaintiffs leave to add an additional subclass representative who alleges meal and rest break claims for the pre-May 2013 time period. If plaintiffs wish to add an additional subclass representative, plaintiffs shall meet and confer with defendants to see if defendants will stipulate to adding an additional subclass representative. If the parties reach a stipulation, they shall file it with the Court in advance of the July 10, 2015 case management conference. If the parties cannot reach such a stipulation, they shall address this issue in the parties' joint statement for the July 10, 2015 case management conference.

Jonathan E. Gertler and Dan L. Gildor of Chavez & Gertler LLP and Lori E. Andrus of Andrus Anderson LLP are appointed class counsel.

Plaintiffs shall serve a proposed class notice form and a proposed order re notice procedures upon defendants no later than **June 15, 2015**;

The parties shall conclude meet-and-confer efforts as to any disputed issues related to the form and procedures for class notice no later than **June 22, 2015**;

If the parties reach a stipulation as to the form and procedures relative to class notice, they shall file such a stipulation by **June 25, 2015**. If the parties do not reach such a stipulation, the

16

parties shall file and serve competing proposed class notice forms and procedures, a supporting brief, if any, not to exceed ten pages, on or before **June 29, 2015**. The Court will address any disputes regarding the class notice forms and procedures at the July 10, 2015 case management conference.

**IT IS SO ORDERED.**

Dated: June 2, 2015

_____
SUSAN ILLSTON
United States District Judge